Lieutenant Colonel Charles S. Graci, Appellant, v. Pennsylvania State Police and James D. Barger, Commissioner of Pennsylvania State Police, Appellees.

Argued February 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard C. Snelbaker*, with him *Martson and Snelbaker*, for appellant.

*Marc Kapustin*, Deputy Attorney General, with him *Benjamin Lerner*, Deputy Attorney General, and *Israel Packel*, Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 14, 1974:

This is an appeal by Lieutenant Colonel Charles S. Graci from the action of the Commissioner of the Pennsylvania State Police in dismissing appellant from the Pennsylvania State Police as recommended by a Court-martial Board convened to hear charges lodged against him.

It was and still is the practice of the State Police to administer promotional examinations to state troopers. Promotion from Private to Corporal, Corporal to Sergeant, and Sergeant to Lieutenant is based, in part, upon the results of these examinations. Examinations are prepared by an independent consulting agency, and then reviewed by a Promotional Review Board, composed of State Police officers, for accuracy and clarity.

On September 6, 1972, appellant, at the invitation of the then Commissioner, Rocco P. Urella, attended the final review session of the Promotional Review Board of the State Police, at which meeting the questions and answers of the promotional examinations, and, in particular, the Sergeant to Lieutenant examination, were discussed by all persons present, including the appellant.

Prior to the administering of the Sergeant to Lieutenant examination on October 27, 1972, the first sixteen and last nine questions of this examination were scrambled, with the desired result that the answer sequence was also scrambled. Sergeant Graci, the appellant's brother, took this examination, and of the 347 persons who took the examination, 69 placed higher than Sergeant Graci and 9 received an identical score.

The Commissioner appointed a three member Disciplinary Board of Review on February 28, 1973, to investigate alleged irregularities in the conduct of the

promotional examinations. On March 2, 1973, this Board recommended that court-martial proceedings against appellant be instituted, and on March 5, 1973, Deputy Commissioner Lieutenant Colonel Wellendorf filed charges and specifications against appellant. The Commissioner convened a Court-martial Board on March 15, 1973, and a hearing lasting 12 days was commenced on June 17, 1973. The Court-martial Board found appellant guilty of all charges and recommended his dismissal, which resulted in the Commissioner's action from which this appeal was taken.

Before considering the merits of this appeal we must first delineate our scope of review. Although the proceedings before the Court-martial Board were conducted as though a criminal proceeding, it is essentially an administrative action. Accordingly, this Court recently held in *Luchansky v. Barger*, 14 Pa. Commonwealth Ct. 26, 321 A. 2d 376 (1974), that our scope of review was one of substantial evidence enlarged to reflect the Commissioner's regulation, effective in this case, that the burden of proof was that of one beyond a reasonable doubt. That is, there must be substantial evidence that the appellant was guilty beyond a reasonable doubt.

Appellant first contends that court-martial procedure deprives him of his constitutional rights. We decided this exact issue in *Dussia v. Barger*, 10 Pa. Commonwealth Ct. 167, 309 A. 2d 607 (1973), and have recently reaffirmed our opinion as to the constitutional validity of this procedure in *Luchansky*, *supra*. These decisions are dispositive of appellant's contention and further consideration thereof is unnecessary.

The appellant had the following charges and specifications preferred against him by Lieutenant Colonel Wellendorf resulting in the court-martial proceeding:

"Charge: Major Violations of Code of Conduct

"Lt. Col. Charles S. Graci is charged with Violation of Field Regulation FR 1-1, paragraphs 1.01 and 1.12A.

"These charges result from the actions of Lt. Col. Charles S. Graci which are set forth in the following Specifications.

"Specification 1: In that Lt. Col. Charles S. Graci did on September 6, 1972, at the State Police Academy Library, Hershey, Dauphin County, Pennsylvania, during the final review of the State Police promotional examination questions and answers to be utilized in the Sergeant to Lieutenant examination in October 1972, covertly and surreptitiously document the number answers to the questions in said promotional examination.

"This is to the prejudice of the good order of the Pennsylvania State Police, Hershey, Dauphin County, Pennsylvania, September 6, 1972, in violation of Field Regulation 1-1, FR1.01.

"Specification 2: In that Lt. Col. Charles S. Graci did between September 6 and October 27, 1972, furnish the answer sequence key to the promotional examination questions in the Sergeant to Lieutenant rank examination to Sergeant Vincent J. Graci, a member of the State Police competing in said examination.

"This to the prejudice of the good order of the State Police in the vicinity of Harrisburg, Dauphin County, Pennsylvania, in Violation of Field Regulation 1-1, paragraph 1.12A."

Field Regulations FR 1-1, paragraphs 1.01 (9/15/68) and 1.12A (10/2/71), which appellant is charged with violating in Specifications 1 and 2, respectively, provide:

"1.01 DEPORTMENT

"A Member shall so conduct himself at all times, both on and off duty, in such a manner as to reflect

most favorably on the Pennsylvania State Police. Conduct unbecoming a Member shall include immorality, or any act or conduct not specifically mentioned in these regulations which tends to bring the Force into disrepute or reflects discredit upon the individual Member as a Pennsylvania State Policeman.

"1.12 INFORMATION—OFFICIAL

"A. *Dissemination of Information*: A member shall treat the official business of the Force as confidential. Information on the business of the Force shall be disseminated only to those for whom it is intended, as directed by a Commanding Officer, or under due process of law."

It is the allegations contained in these specifications and charges that the evidence must sustain by the measure of proof we have defined in *Luchansky* if the appellees are to prevail.

A review of the record as to the evidence supporting Specification 1—alleging appellant to have covertly and surrepetitiously documented answers to examination questions—falls far short of the proof required.

Appellant did not contest and readily admitted that he recorded the answers to some questions being reviewed by the Promotional Review Board. The essential question, therefore, within the ambit of this charge, is whether in doing so he acted covertly and surreptitiously, i.e., secretly and by stealth. Considering the full weight of the evidence produced by the prosecution witnesses as to this charge, only the opposite conclusion can possibly be reached. A fair summary of this testimony is to the effect that appellant recorded the answers to certain questions on the second page of a pad resting on the top of a table using a large pencil in the process and that he did so in the presence of, and plain view of, all persons present at the meeting. At the conclusion of the meeting, this

page was torn from the pad and placed in his pocket as he left.

Apparently recognizing that this evidence is wholly insufficient to support this charge, we are urged by appellees to consider other evidence to the effect that during the meeting appellant requested repetition of an "unusual number" of answers to various questions and recorded them in correlation with the question. Such evidence is capable of no inference except candor and openness. We are also urged to consider the fact that appellant was not a member of the review board; that he was not administered an oath of secrecy contrary to customary procedure and that the then Commissioner, upon whose invitation appellant attended the meeting, was not present during the entire session. This evidence, by reasonable inference or otherwise, bears no relevancy to this charge. It is evidence only of irregularities in established procedures of the Pennsylvania State Police, fault for which point to persons other than appellant. By any standard of proof, the evidence wholly fails to support this charge.

The second specification and charge allege that appellant furnished the answers he recorded to the Sergeant-Lieutenant examination questions to Sergeant Graci who later took this examination. The evidence of this charge when considered most advantageously to the prosecutor also fails to establish appellant's culpability.

Understandably, the record is barren of any direct evidence of delivery of the information obtained by appellant to Sergeant Graci, his brother. Lacking any direct evidence, the prosecution would establish this critical element of its requisite proof by circumstantial evidence from which, it contends, may properly be drawn certain inferences. We resolve this issue consistent with the burden of proof required of the prosecution in this case.

The cases are legion that circumstantial evidence alone may be sufficient to establish the commission of a crime, *Commonwealth v. Simpson*, 436 Pa. 459, 260 A. 2d 751 (1970). In determining whether the evidence is sufficient in law to prove that a defendant is guilty beyond a reasonable doubt, we must accept as true all of the evidence, direct and circumstantial, and all *reasonable* inferences arising therefrom. *Commonwealth v. Fortune*, 456 Pa. 365, 318 A. 2d 327 (1974). But when a conviction is based solely on circumstantial evidence, "the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all." *Commonwealth v. Clinton*, 391 Pa. 212, 218, 137 A. 2d 463, 466 (1958). If the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand. *Commonwealth v. Townsend*, 428 Pa. 281, 237 A. 2d 192 (1968).

As to this point the material and relevant testimony establish that the appellant, as he admits, recorded certain examination answers in the Sergeant to Lieutenant examination. Appellant's brother subsequently took that examination and placed 69th out of the 347 who took the examination. The evidence further establishes that the probabilities of Sergeant Graci's duplicating the pre-scrambled answer sequence, to the extent that he did so, are astronomical, and that Sergeant Graci is the appellant's brother.

From the evidence of the astronomical improbability of Sergeant Graci's duplication of the answer sequence, the prosecution contends that logic and common sense would lead any reasonable man to conclude that Sergeant Graci must have had possession of an answer key prior to his taking of the examination. Assuming that Sergeant Graci did have the answers prior to the examination, how is the crucial element of the second charge, that is transfer by appellant to Sergeant Graci, established?

The transfer is established, contends the prosecution, on the basis that appellant recorded certain answers, and that Sergeant Graci received those answers. A careful scrutiny, however, of this reasoning recognizes an additional element in the chain establishing the transfer, i.e., Sergeant Graci is the appellant's brother. The necessity of including this additional element of blood relationship to the prosecution's case becomes apparent if we consider the case without that information. To rephrase the question, if Sergeant Graci was not related to the appellant, would the transfer be established beyond a reasonable doubt? We think not. The fact that the appellant recorded the answers and the fact that someone, not related to the appellant, received the answers, without more, would not be sufficient to raise a reasonable inference that the appellant was the person who provided the answers.

Accordingly, a crucial and necessary underpinning of the prosecution's theory of this case is the blood relationship between appellant and Sergeant Graci. To further refine the issue, can a critical element of a charge against a defendant be proven, and can the charge be sustained on the basis of the defendant's blood relationship with another actor in the drama? While it is true, as the prosecution points out, that they need not present evidence to negate the operation of all other possible criminal agencies, it is also true that they must establish the appellant's guilt on the basis of direct and circumstantial evidence and on the basis of reasonable inferences derived therefrom. In our opinion, the fact of a blood relationship does not as a matter of law raise such a reasonable inference sufficient to establish that the appellant transferred certain answers to Sergeant Graci. Parenthetically, we note that other troopers taking the Sergeant to Lieutenant examination also duplicated to a greater or lesser degree the pre-scrambled answer sequence. As-

suming that they were given the answers, they could just as easily have given them to Sergeant Graci.

Having concluded that there is not substantial evidence to prove appellant's guilt beyond a reasonable doubt, we enter the following

### ORDER

Now, August 14, 1974, the order of the Commissioner of the Pennsylvania State Police dismissing appellant from the service in the State Police is hereby reversed, and appellant is hereby ordered reinstated with full back pay from the date of his suspension without pay on March 6, 1973.

Judge MENCER dissents.