G. D. Roberts et al., Petitioners *v.* James N. Wade, Secretary of Administration of The Commonwealth of Pennsylvania, Respondent.

Argued September 12, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*John R. White,* with him *Campbell and White,* for petitioners.

*Joseph Kenneth Hegedus,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, Chief, Civil Litigation, and *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE MENCER, December 21, 1978:

In *Roberts v. Office of Administration,* 30 Pa. Commonwealth Ct. 19, 372 A.2d 1233 (1977), on an appeal from a decision that Pennsylvania State Police officers' alleged reclassification did not constitute a demotion, we remanded to the Secretary of Administration (Secretary) for a hearing on the merits. The Secretary complied with our remand order and, on October 17, 1977, rendered an adjudication granting the appellants herein the relief they requested; namely, promoting them to the rank of corporal retroactively to

March 23, 1972 with attendant pay, seniority, and other applicable benefits.

On November 2, 1977, the Attorney General requested the Secretary to reconsider his adjudication. On March 16, 1978, the Secretary reversed his previous adjudication. This appeal followed and we reverse.

In *Roberts v. Office of Administration, supra,* 30 Pa. Commonwealth Ct. at 21-22, 372 A.2d at 1234, we set forth the background of the instant appeal:

In 1969 the State Police Commissioner (Commissioner) instituted the new rank of Crime Investigation Specialist (CIS), together with a special training program, and invited state policemen to apply for it. Appellants applied and were admitted in May, 1970. They were immediately advanced to a pay scale equivalent to that of Corporal, and were removed from the normal competitive ranks and restricted to competition for promotion within the CIS series.

On March 23, 1972, the CIS program was terminated as a result of an opinion of the Attorney General wherein he stated that the program as it then existed was illegal because of the absence of rules and regulations governing it, and because the initial entry of individuals into the program was in disregard of merit principles. Appellants were thereupon reclassified to the rank of Trooper, but received no reduction in pay. At that time, a section of the Pennsylvania State Police Field Regulations provided for an informal procedure for the airing of grievances. Though Appellants complained to their superiors about the reclassifications, they took no formal action for three and a half years. On October 29, 1975, the Commissioner

promulgated a new, more detailed, four-step grievance procedure. Shortly thereafter, Appellants availed themselves of the new procedure by formally asserting their grievances in writing. . . .

The parties are in accord that the issue here is whether the appellants were promoted in May of 1970 and whether they were demoted in March of 1972 to the rank formerly held.

The Secretary's adjudication of October 17, 1977 was foundationed on the following findings of fact:

1. In January, 1969, then Commissioner of State Police, Frank McKetta announced the creation of a program known as Criminal Investigation Specialists. This program was intended to utilize highly specialized investigation techniques and thus provide the organization with more effective investigative performance while relieving the rank officers to perform traffic and other duties. In the program description, Commissioner McKetta emphasized the unique working conditions, specialized training and the types of specialized assignments this corps was to receive.

2. The selection procedure issued by Commissioner McKetta solicited applicants from the ranks and described the required review process and the necessity for favorable recommendations of various command levels. Finally, the selection procedure required that all candidates sign an acceptance statement waiving their positions on promotion lists in the uniformed ranks. The candidates further agreed to compete for promotion only within the Criminal Investigation Specialist series (considered a non-uniformed rank). Consequently, the appellants'

names were removed from the Corporal promotion lists in 1970. They were ineligible to compete for promotion to Corporal during calendar year 1971.

3. In December, 1968, the Executive Board amended the Commonwealth's Classification Plan to establish the class of Criminal Investigation Specialist I. The pay range for Criminal Investigation Specialist I was 32, the same as Corporal. The pay range for Trooper was 30. The appellants, all of whom were Troopers, were selected for the program and realized an increase in pay range. The factors of dislocation, overtime and uniform allowances were considerations by the Commonwealth when establishing the pay range for CIS I.

4. On May 7, 1970, the ten appellants were moved from the title of Trooper to Criminal Investigation Specialist I with an increase in salary.

5. Between 1970 and 1972, during the course of the operation of the program, promotion tests and/or lists for the Criminal Investigation Specialists were never developed nor was specialized training provided as committed. Also, during this period, it was evident that the assigned duties of Criminal Investigation Specialists were different depending on the local headquarters. Furthermore, there appeared to be conflicting testimony regarding the application of the CIS program in the field.

6. When Commissioner Urella replaced Commissioner McKetta a decision was made to disband the Criminal Investigation Specialist program. Consequently, on March 23, 1972 the appellants were returned to the rank of Trooper

(pay range 30) without a decrease in salary. The appellants were authorized to take 1972 promotion examinations for Corporal.

7. The words 'promotion' and 'demotion' do not appear in any official correspondence relating to the personnel actions involving the appellants. Only the word 'reclassification' is used.

8. Both parties to the dispute concede that the appellants' performance as officially recorded prior to and during the CIS program was at least satisfactory.

9. Nine of the appellants currently occupy positions classified as Trooper. The tenth appellant held the rank of Trooper upon his retirement in July of 1976.

The raising of an employe's importance, dignity, responsibility, authority, and/or prestige may, without more, constitute a promotion. Likewise, the lowering of these aspects of one's employment may constitute a demotion. *See Roberts v. Office of Administration, supra; Department of Education v. Kauffman,* 21 Pa. Commonwealth Ct. 89, 343 A.2d 391 (1975). An increase or decrease in salary is a further factor to consider in determining whether a promotion or demotion has occurred. *Smith v. Darby School District,* 388 Pa. 301, 130 A.2d 661 (1957).

This record amply supports the Secretary's initial adjudication that the appellants were promoted in 1970 and demoted in 1972. Former State Police Commissioner Frank McKetta, the actual instigator of the CIS program, testified that the appellants' entrance into the CIS program constituted a promotion. Commissioner McKetta viewed those becoming Criminal Investigation Specialists as acquiring a new status due to the greater importance, dignity, responsibility, au-

thority, and prestige attached to participation in the program. Likewise, the testimony of Lieutenant Colonel Grosnick, the person given the responsibility for the implementation of the program, supports the conclusion that appellants' entrance into the CIS program constituted a promotion. The increase in salary, removal from the normal competitive ranks, and restriction to promotions within the CIS program were further indicia related to the 1970 changeover consistent with the concept of promotion.

The Secretary's adjudication of March 16, 1978 did not conclude that appellants had not been promoted but rather that the consequences of his earlier adjudication would be unfair to others. We do not perceive this consideration to be the issue here, and we have previously held that promotions within the ranks of the Pennsylvania State Police may result from other than the usual merit promotion procedures. *McCann v. Commonwealth,* 17 Pa. Commonwealth Ct. 127, 330 A.2d 573 (1975).

In addition, the Secretary stated in his adjudication of March 16, 1978 that he should not have assigned so much weight to his original conclusion that the transfer of personnel in 1970 was not a reclassification but in fact a promotion. On the contrary, the Secretary was absolutely correct in the first instance when he decided to accept the grievance panel's conclusion that what occurred here was "a position reclassification with a simultaneous promotion without examination into the CIS program."

We do not question the prerogative of the Secretary to reconsider his adjudication at the direct urging of the Attorney General. However, we do fail to understand the reasons for his reversal of his original well-reasoned adjudication which was based on conclusions reached by a grievance panel comprised of the

Director of Personnel, Office of Administration; the Personnel Director, Bureau of Corrections; and the Chief of Position Analysis, Department of Public Welfare. Those reasons were that the consequences of his first adjudication were unfair to State Police troopers not in the CIS program and would "substantially reduce the chances for minority promotions" within the ranks of the Pennsylvania State Police and that he had given too much weight to the meaning of the term "reclassification." None of these reasons, except "reclassification," pertains to the legal issue of whether the appellants were promoted in May of 1970 and demoted in March of 1972. As to the reclassification factor, we have herein stated that the Secretary was correct when, in his original adjudication, he decided that appellants were promoted at the time their positions were reclassified.

In summary, on this record we must conclude that the Secretary's adjudication of October 17, 1977 that appellants were promoted in May of 1970 and demoted in March of 1972 was supported by substantial evidence, whereas the Secretary's adjudication of March 16, 1978 is not supported by substantial evidence but is supported by reasons not germane to the issue of this case and therefore cannot stand and must be reversed.

Accordingly, we make the following

ORDER

Now, this 21st day of December, 1978, we do hereby reverse the March 16, 1978 adjudication of the Secretary of Administration which rescinded his October 17, 1977 adjudication pertaining to the appeals of Troopers G. D. Roberts, B. A. Yanetti, P. R. Ciprich, M. J. O'Brien, R. T. Roth, G. W. Eddy, P. J. Piscotty, T. H. Shelar, S. P. Strawser, and C. P. Miller and re-

mand to the Secretary of Administration with directions that he direct the Commissioner of the Pennsylvania State Police to promote the said individuals still on active duty to the rank of corporal retroactively to March 23, 1972 and restore to said individuals all pay, seniority, and benefits they would have received had they been in the rank of corporal continuously from March 23, 1972 to the present time or to the date of retirement, if such has occurred prior to the date of this order.