IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.W., | : | |
| Petitioner | : | **CASE SEALED** |
| | : | |
| v. | : | No. 1560 C.D. 2018 |
| | : | Submitted: April 18, 2019 |
| Department of Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: August 23, 2019

M.W. (Mother), *pro se*, petitions for review of an adjudication of the Department of Human Services, Bureau of Hearings and Appeals (Bureau), denying her request to expunge an indicated report from the ChildLine & Abuse Registry[1] that named her as a perpetrator of child abuse. In so holding, the Bureau adopted the recommended adjudication of the Administrative Law Judge (ALJ) in its entirety. Mother argues that the Bureau abused its discretion in refusing to grant her a continuance of the hearing that she could not attend because of her incarceration.[2] We reverse and remand.

On November 13, 2017, the County Children and Youth Services Agency (CYS) filed an indicated report of child abuse naming Mother as the

---

[1] ChildLine, a unit within the Department, operates a statewide system for receiving reports of child abuse; refers the reports for investigation; and maintains the reports for reference. 55 Pa. Code §3490.4 (definition of "ChildLine"). The ChildLine & Abuse Registry (ChildLine Registry) is maintained in accordance with the Child Protective Services Law, 23 Pa. C.S. §§6301–6386.

[2] The County Children and Youth Services Agency (CYS) intervened and filed a brief with this Court; the Department declined to file a brief.

perpetrator of abuse of K.K., her two-year-old daughter (Child). The report stated that as a result of an October 16, 2017, altercation between Child's father (Father) and Mother, Child was placed at great risk of harm. On December 28, 2017, Mother requested the Department of Human Services' (Department) review of CYS's report, alleging that Child was not present during the altercation.

On February 13, 2018, Mother entered a guilty plea to charges of aggravated assault, possession of an instrument of crime, simple assault, and recklessly endangering another person. She was sentenced to 11½ to 23 months in the county prison, to be followed by five years of probation.[3]

On May 15, 2018, the Department reviewed the indicated report and concluded that it was accurate. On June 8, 2018, Mother appealed, requesting a hearing before the Bureau. On June 18, 2018, the Bureau mailed a notice to Mother at the county prison, advising her that the hearing was scheduled for September 13, 2018.

Mother did not appear at the hearing, but CYS did. CYS advised the ALJ that it sent Mother a "unified prehearing statement" to complete. Notes of Testimony, 9/13/2018, at 6 (N.T. __). The ALJ acknowledged that Mother had filed a prehearing statement, in which she requested a continuance of the hearing and permission to present a witness by telephone. The ALJ observed that Mother did not provide a telephone number where she could be reached at the county prison. The ALJ also stated for the record that Mother had telephoned the ALJ's office on September 4, 2018, to inquire into her requested continuance and to explain that she was still incarcerated. The ALJ's office informed Mother that she needed CYS's

---

[3] The guilty plea charges involved Mother's altercation with Father. CYS does not assert that the criminal charges related to an endangerment of Child.

2

agreement to the continuance and a "waiver of the timeliness of the hearing." N.T. 8. On September 7, 2018, the Bureau received a letter from Mother requesting a continuance but, according to the ALJ, that letter did not contain a waiver of the hearing timeliness requirement.

The ALJ stated that "absent her waiver of timeliness, I'm not permitted or the ranks don't allow me to entertain the continuance request." N.T. 9. The ALJ asked CYS's counsel about its position on the continuance, assuming Mother "had provided the appropriate waiver[.]" *Id.* CYS responded, "I believe I most[] likely would have objected only because we're prepared to proceed today." *Id.*

The ALJ denied the continuance request, and the hearing commenced. CYS presented two witnesses: Father and a CYS caseworker.

Father testified that on the night of October 15, 2017, he, Child, and Mother slept together in the same bed. In the morning, Father woke up "having [something like] bleach poured down [his] throat…." N.T. 15. However, he was not sure it was bleach, and he went back to sleep. Later, he heard Mother coming back into the room. To prevent another bleach attack, he put up his hand. When he looked up there was blood running down his arm. Mother jumped on him with a knife, which he grabbed and, in doing so, almost cut off his thumb.

Father testified that Child was next to him in the bed during Mother's assault. When he grabbed the knife, he fell back on the bed, and hit Child with his head. Child was scared and confused and started screaming. Mother grabbed Child, Father's keys and his wallet. He pinned down Mother with his bleeding hand and used the other to call 911. The police came and arrested Mother.

Father stated that Mother created a highly dangerous situation for Child, who could have been stabbed accidentally. He did not know what precipitated

Mother's attack. Her face was blank, and she did not speak until the incident was over. She said she did it because Father was "mean to [her]." N.T. 26.

Next, a CYS caseworker testified. She interviewed Mother at the county prison. Mother admitted putting bleach on a towel and pushing it into Father's mouth. She also admitted to getting a knife from the kitchen and stabbing him. She was upset because she thought Father had been unfaithful. The caseworker also spoke to Father, who told her that Child had been in the room when the incident occurred. The caseworker concluded that Mother's actions constituted child abuse because of Child's close proximity to Father at the time of the stabbing.

The ALJ issued a recommended adjudication. It found that Mother had been advised, orally by phone, that the continuance she had requested in her prehearing statement lacked a waiver of the timeliness of the hearing. Mother responded by letter, again requesting a continuance, but without an express timeliness waiver. Accordingly, the ALJ denied the continuance request.

On the merits, the ALJ found that Mother had committed child abuse by creating a reasonable likelihood of danger to Child. Section 6303(b.1)(5) of the Child Protective Services Law states, in relevant part, as follows:

> The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> ***
>
> (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

23 Pa. C.S. §6303(b.1)(5). The ALJ based her conclusion on Father's testimony that Child was sleeping next to him in the bed when Mother jumped on him with a knife in her hand.

4

The Bureau adopted the ALJ's recommended decision in its entirety. Mother sought reconsideration, explaining that she could not attend the hearing because she was incarcerated. She asserted that Child was not present during the incident but was in her own bedroom. Mother requested a chance to be heard, but the Secretary denied her application for reconsideration.

Mother petitioned for this Court's review. On appeal,[4] she argues that it was error for the hearing on her appeal to proceed even though she could not be present because of her incarceration. Mother contends that her continuance should have been granted because she completed and mailed the prehearing paperwork. Mother explains that she did not "know what a waiver of timeliness [was and] thought [it] was the original prehearing paper work." Mother Brief at 9.

CYS responds that Section 6341(c.2)(3) of the Child Protective Services Law, 23 Pa. C.S. §6341(c.2)(3), requires the Bureau to hold a hearing within 90 days of the date of the scheduling order. Mother had to provide a waiver of the 90-day hearing requirement to be granted a continuance, and she did not do so. As such, the ALJ properly denied her request for a continuance. Mother's incarceration does not excuse her failure to abide by the statutory prerequisites to a hearing.

We begin with a review of the law. The refusal to grant "a continuance rests in the discretion of the court or administrative agency to which the application is made, and its exercise of this discretion will not be reviewed except in clear cases

---

[4] Our review determines whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *Bird v. Pennsylvania Department of Public Welfare*, 731 A.2d 660, 663 (Pa. Cmwlth. 1999). Where the issue is one of law, our standard of review is *de novo* and our scope of review is plenary. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 963 A.2d 1274, 1276 (Pa. 2009).

5

of abuse of discretion." *Luzerne County Children and Youth Services v. Department of Human Services*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019). To wit,

> [a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will…. To determine whether an abuse of discretion occurred, the reviewing court must examine the circumstances surrounding the denial of the continuance request.

*Id*. at 398-99 (citations and footnote omitted).

Section 6341(c.2) of the Child Protective Services Law, 23 Pa. C.S. §6341(c.2), sets the requirements for a hearing on an indicated child abuse report. It states, in relevant part, as follows:

> A person making an appeal under subsection (a)(2) [(relating to a person named in an indicated report of child abuse)] or (c) [(relating to refusal of requests to secretary)] shall have the right to a timely hearing to determine the merits of the appeal. A hearing shall be scheduled according to the following procedures:
>
> (1) Within ten days of receipt of an appeal pursuant to this section, the department shall schedule a hearing on the merits of the appeal.
>
> (2) *The department shall make reasonable efforts to coordinate the hearing date with both the appellee and appellant.*
>
> (3) *After reasonable efforts required by paragraph (2) have been made, the department shall enter a scheduling order, and proceedings before the Bureau of Hearings and Appeals shall commence within 90 days of the date the scheduling order is entered, unless all parties have agreed to a continuance*. Proceedings and hearings shall be scheduled to be heard on consecutive days

6

> whenever possible, but if not on consecutive days, then the proceeding or hearing shall be concluded not later than 30 days from commencement.

23 Pa. C.S. §6341(c.2) (emphasis added).

Section 6341(c.2) of the Child Protective Service Law does not mandate the filing of a waiver of timeliness in order for a continuance to be granted. Section 6341(c.2) states that the Department "shall make reasonable efforts to coordinate the hearing date[.]" 23 Pa. C.S. §6341(c.2)(2). Once that is done, the Department will begin the hearing "within 90 days" of the scheduling order unless the parties agree to a continuance. 23 Pa. C.S. §6341(c.2)(3). There is no evidence that the Department made reasonable efforts to coordinate the hearing date with Mother and CYS, as required in Section 6341(c.2). The ALJ waited until the day of the hearing to inquire into CYS's position on the continuance request. Had this inquiry been made earlier, CYS may have agreed. The indicated report would have simply remained on the ChildLine Registry until a hearing on Mother's appeal could be held at a time when Mother could attend. It was Mother, not CYS, that bore the consequence of a hearing postponement.

The Bureau cited Section 6341(c.2)(3) of the Child Protective Services Law to support its conclusion that Mother's waiver of timeliness was required. However, this was error. There is no "waiver of timeliness" required from either party in order for a continuance to be granted. Although CYS could have agreed to a continuance, its acquiescence was not necessary. The ALJ still had discretion to grant Mother's continuance request. *Luzerne County,* 203 A.3d at 398. Mother's waiver was unnecessary and redundant because she, the alleged perpetrator, was the party requesting the continuance. Her act of making the request in itself waived the 90-day requirement.

7

We hold that the Bureau misapplied the law and entered a manifestly unreasonable order by denying Mother's continuance request for the sole reason that she did not file a waiver of timeliness. Accordingly, the adjudication of the Bureau is reversed and the matter is remanded to the Bureau for a new hearing on the merits of Mother's appeal at a time mutually convenient to Mother and CYS.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M.W.,                         :
        Petitioner      :   **CASE SEALED**
                          :
       v.               :   No. 1560 C.D. 2018
                          :
Department of Human Services,  :
        Respondent    :

# **O R D E R**

AND NOW, this 23rd day of August, 2019 the adjudication of the Department of Human Services, Bureau of Hearings and Appeals is REVERSED and this matter is REMANDED to the Bureau for a new hearing on the merits of M.W.'s appeal.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge